# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| LESLIE DEAN, | : | Case No. 21-cv-363 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| AETNA LIFE INSURANCE COMPANY, *et al.*, | : | |
| Defendants. | : | |

### ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM (Doc. 12)

This civil action is before the Court upon Plaintiff's motion to dismiss Defendant's counterclaim (Doc. 12) and the parties' responsive memoranda. (Docs. 13 and 14).

### I. FACTS AS ALLEGED BY THE COUNTERCLAIMANT

For purposes of this motion to dismiss, the Court must: (1) view the counterclaim in the light most favorable to the counterclaimant; and (2) take all well-pleaded factual allegations as true. *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

This is an Employee Retirement Income Security Act ("ERISA") case. (Doc. 1). As is relevant here, Defendant-counterclaimant Aetna Life Insurance Company ("Aetna") asserts that it overpaid long-term disability benefits to Plaintiff, Leslie Dean, who was

1

concurrently receiving social security disability benefits.[1] (Counterclaim, Doc. 11 at PageID# 103, ¶¶1-19).

Dean was formerly an employee of URS corporation. (*Id.* at ¶3). She participated in a welfare benefit plan (the "plan"), governed by ERISA. (*Id.* at ¶¶4, 6). That plan included a long-term disability ("LTD") insurance policy. (*Id.* at ¶5). By terms of the LTD policy, a claimant's benefits under the policy were to be reduced (or "set off") if the claimant started receiving other benefits, including, as is relevant here, social security disability payments ("SSD"). (*Id.* at ¶6).

The plan, which Aetna asserts is a contract, provides Aetna with the right to recover overpayments. (*Id.* at ¶¶ 14, 18). According to Aetna, Dean indeed received over-payments. (*Id.* at ¶17). From October 2015 to July 2020, Dean received $2,392.00 in LTD benefits every month. (*Id.* at ¶9). Dean also received $1,528.00 every month in SSD benefits starting in October 2015. (*Id.* at ¶11). In May 2019, the Social Security Administration alerted Aetna to Dean's receipt of SSD benefits. (*Id.* at ¶10).

---

[1] Plaintiff initiated this suit to recover benefits to which she alleged she is entitled. (Doc. 1). Dean names her employer, URS Corporation, and two plan administrators, Hartford Life & Accident Insurance company ("Hartford") and Aetna life Insurance Company ("Aetna"), as Defendants. (Doc. 1). The parties agreed to dismiss claims against URS corporation. (Doc. 10). Aetna states it acquired Hartford (Doc. 11 at n.1), and, for that and other reasons, a reference to "Aetna" ought to implicitly include Hartford. Moving forward, the Court refers to a singular Defendant ("Aetna"), notwithstanding the nominal existence of Hartford as a Defendant.

Because Aetna paid Dean LTD benefits with no set-off for the SSD benefits Dean received concurrently, Aetna asserts it has overpaid Dean in the amount of $50,428.40. (*Id.* at ¶15).  Aetna states its entitled to reimbursement. (*Id.* at ¶17).  On this basis, Aetna has filed a counterclaim for breach of contract. (*Id.* at ¶1).  Dean moves to dismiss that counterclaim under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 12). Separately, Dean moves the Court to issue a statement of her rights under ERISA. (*Id.*).

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint, or a counterclaim, and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted."  To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." [2]

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id*. (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a

---

[2] For present purposes, "complaint" should be read interchangeably with "counterclaim."

legal conclusion couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*.

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the case shall be dismissed. *Id*. (citing Fed. R. Civ. P. 8(a)(2)).

### III. ANALYSIS

Dean makes three arguments in support of her motion. First, Aetna can only seek equitable relief under ERISA and any other claim for damages is pre-empted. (Doc. 12 at 3). Second, Dean's social security benefits are off-limits to creditor claims by right of 42 U.S.C. §407(a). (*Id.* at 5). Third, the set-off that Aetna seeks to recoup under contract is rendered void by an Ohio insurance law, a law that Dean necessarily argues is not pre-empted by ERISA. (*Id.* at 6). In fact, the Ohio insurance law falls under the ERISA

savings clause, removing it from the sweep of ERISA's pre-emption. (*Id.* at 8-9). The Court agrees with Plaintiff's first argument, so it will not reach the others.

Specifically, the Court finds Aetna's counterclaim is pre-empted by ERISA. Aetna could have moved for relief under the authority of ERISA. 29 U.S.C. § 1132(a)(3). It explicitly does not. Instead, perhaps in the hopes of availing itself of a broader array of remedies, Aetna asserts its breach of contract counterclaim is before this Court on supplemental jurisdiction—suggesting, it is at-bottom a state-law claim. For that reason, in part, the counterclaim is pre-empted by ERISA.

29 U.S.C. §1132(a)(3) permits benefit plan fiduciaries, the hat Aetna is seemingly wearing here, to bring a civil suit to "A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." It has long-been established that that Congress meant what it said when it limited recovery under §1132(a)(3)(B) to "appropriate equitable relief." *See e.g., Mertens v. Hewitt Assocs.*, 508 U.S. 248, 259, n.8 (1993) ("'Equitable' relief must mean something less than all relief."). The trickier question is what remedies fall under "appropriate equitable relief."

At least three recent Supreme Court cases have analyzed the question. To set the framework of the parties' arguments and the relevant law, the Court looks at each.

5

The Supreme Court's decision in *Great-West v. Annuity Ins. Co.* drew a line between restitution at law and restitution at equity. *See* 534 U.S. 204, 210 (2002). Restitution for contractual liability sought from a debtor's general assets is restitution at law. *Id.* at 214. Because such relief is not "equitable," it is not available to the ERISA fiduciary seeking recompense for overpayment. *Id.* On the other hand, an ERISA-empowered fiduciary could seek recovery from a specifically identifiable fund, as was permitted in historical equity practice. *Id.*

Following *Great-West*, *Sereboff v. Mid Atl. Med. Servs* provided guidance on what constituted "specifically identifiable" funds from which an ERISA fiduciary could recover. 547 U.S. at 363 (2006). The Supreme Court in *Sereboff* held that proceeds from a tort settlement that were "set aside and preserved [ in the beneficiaries'] investment accounts" were indeed identifiable and within reach of a fiduciary's claims under §1132(a)(3). 547 U.S. at 363 (2006).

Finally, the Supreme Court in *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan* doubled down on the notion that equitable relief, pursuant to an ERISA civil enforcement action, cannot attack a beneficiary's general assets. 577 U.S. 136, 143–44 (2016). The Supreme Court in *Montanile* remanded for fact-finding regarding "whether [the beneficiary] kept his settlement fund separate from his general assets or dissipated the entire fund on nontraceable assets." 577 U.S. 136 at 151. The

Sixth Circuit has appropriately observed that *Montanile* instructs lower courts to "follow the money." *Zirbel v. Ford Motor Co.*, 980 F.3d 520, 524 (6th Cir. 2020).

For illustration, here is how the court in *Zirbel* followed the money:

"As soon as Zirbel received the overpayment, a lien attached, permitting the plan to seek equitable restitution in the amount of the $243,190. [] Nothing from the receipt of those funds to the start of the lawsuit changed that calculation. Once she received the overpayment, she placed it into her accounts. This commingling gave Ford an equitable lien against those accounts up to the overpayment. Because *Zirbel* does not argue that she dissipated the funds in those accounts into nontraceable items, that's all we need to know. Ford could recover through this equitable lien."

*Zirbel v. Ford Motor Co.*, 980 F.3d 520, 524 (6th Cir. 2020)

While Aetna cites to the above-referenced cases throughout its opposition, its counterclaim, quite remarkably, steps aside the whole equity-focused jurisprudence and asserts a right to recover "damages." (Docs. 11 at PageID# 105). Moreover, by its own admission, Aetna is not acting pursuant to its authority under ERISA. *See* 29 U.S.C. §1132; (*see also* Doc. 13 at 8). Aetna is instead premising its claim on state contract law and this Court's supplemental jurisdiction. (*See* "Counterclaim," Doc. 11 at ¶2 ("This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1367.")).

Although pre-emption is explicitly raised by Dean as a basis for dismissal, Aetna does not even address the question of pre-emption. Perhaps that is strategic. It seems Aetna wants to skim off some facially helpful language from ERISA fiduciary cases, while maintaining, through its state law counterclaim, a right to seek legal damages. A

7

close look at Aetna's arguments highlights the folly in such a strategy.

First, attempting to recharacterize *Great-West* and *Sereboff,* Aetna argues that "neither case supports the proposition that relief under Section [§1132(a)(3)] is the exclusive avenue to obtain recovery from overpaid ERISA beneficiaries." (Doc. 16). Those cases, though, involved a fiduciary acting explicitly under the authority of §1132(a)(3) and thus had no need to discuss ERISA's remarkably broad pre-emption of other laws and claims. As has been long-established, "ERISA preempts any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. §1144(a). Thus, at least for overpayment claims that "relate to" the plan in-question, §1132(a)(3) is indeed the exclusive remedy because everything outside of it is pre-empted. That is the well-known statutory design.

Unquestionably, a breach of contract cause of action, premised on state common law, is a "state law claim," subject to ERISA's preemption so long as it "relates to" the plan. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48 (1987). While many courts have wrestled with the question of whether state law claims "relate to" an employee benefit plan—*see, e.g.*, *Marks v. Newcourt Credit Grp., Inc.,* 342 F.3d 444 (6th Cir. 2003)—here it is obvious. Pursuant to the plan, Aetna allegedly overpaid benefits. It seeks return of the overpaid benefits to the plan. There are no third-parties involved, and no rights implicated outside of those granted by the plan. Accordingly, the state-law breach of contract counterclaim here "relates to" the plan. In fact, the "plan" and the allegedly

breached "contract" are one in the same. Thus, Aetna's claim is pre-empted.

Courts within the Sixth Circuit have similarly found that state-law claims seeking a return of unduly paid benefits cannot escape ERISA's pre-emption. For example, in *Klaiss v. Steel Tool,* decided after the seminal Supreme Court ERISA cases mentioned above, the court held "Plaintiff's unjust enrichment claim is 'tantamount to an action seeking return of contributions made under the terms of the plan and for restitution of any overpayments under [ERISA's civil enforcement provision]'…. ERISA therefore preempts Count I of Plaintiff's First Amended Complaint."[3] No. CV 18-12053, 2019 WL 4010458, at *4 (E.D. Mich. Aug. 26, 2019) (citing *Jackson v. Wal-Mart Stores, Inc.,* 24 F. App'x 132, 133 (4th Cir. 2001)).

The persuasive *Klaiss* ruling straightforwardly applies to this case. Moreover, *Klaiss* is also a refutation to Aetna's perhaps implied argument that *Montanile* and/or other cases have somehow adopted a different stance on the scope of ERISA's pre-emption. Both before and after *Montanile,* to be clear, "[a]ny state-law cause of action

---

[3] Many litigants have tried to argue their state-law claims are not pre-empted because, to simplify, the state law claims involve different considerations. Those end-runs tend to fail so long as the claim arose out of the administration of the plan. For example:

> Because this duty of ordinary care arises independently of any duty imposed by ERISA or the plan terms, the argument goes, any civil action to enforce this duty is not within the scope of the ERISA civil enforcement mechanism. [ ]The duties imposed by the THCLA in the context of these cases, however, do not arise independently of ERISA or the plan terms."

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 212 (2004)

that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear and congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209 (2004).

Compounding its issues, Aetna picks up on this phrase from *Great-West*: "[t]here may have been other means for petitioners to obtain the essentially legal relief that they seek.") (emphasis added). (Doc. 8 at 6 (quoting *Great-West*, 534 U.S. at 220)). This quote is misleading. For context, here is the following sentence from *Great-West*: "We express no opinion as to whether petitioners could have intervened in the state-court tort action brought by respondents or whether a direct action by petitioners against respondents asserting state-law claims such as breach of contract would have been pre-empted by ERISA." 534 U.S. 204, 220 (2002).

Aetna, in other words, has hitched its argument to indeterminate dicta. That will not cut it here, especially given the undisturbed breadth of ERISA's pre-emptive sweep. Aetna cannot rely on open-ended speculation of recovery by "other means." It must show a basis for relief given the facts it has pleaded. Fed. R. Civ. P. 12(b)(6). It fails to do so.

Aetna is similarly misguided when it cites to language from *Montanile*. The quote relied on by Aetna states that after a defendant has dissipated his assets, "the plaintiff then may have a personal claim against the defendant's general assets—but recovering out of those assets is a legal remedy, not an equitable one." *Montanile*, 577 U.S. at 145

(2016); (*see also* Doc. 13 at 7). Again, Aetna's quote is woefully out-of-context. This section of the *Montanile* decision regards equitable and legal remedies in general. It acts a pre-cursor to the ERISA discussion. Here is the full paragraph from which Aetna quotes:

> To resolve this issue, we turn to <u>standard equity treatises</u>. As we explain below, those treatises make clear that a plaintiff could ordinarily enforce an equitable lien only against specifically identified funds that remain in the defendant's possession or against traceable items that the defendant purchased with the funds (e.g., identifiable property like a car). A defendant's expenditure of the entire identifiable fund on nontraceable items (like food or travel) destroys an equitable lien. The plaintiff then may have a personal claim against the defendant's general assets—but recovering out of those assets is a legal remedy, not an equitable one.

577 U.S. 136, 144–45 (2016) (emphasis added).

The context provided by the whole paragraph makes clear that a more accurate quotation of the last sentence would read, "the plaintiff [in a standard equity case] then may have a personal claim again defendant's general assets —but recovering out of those assets is a legal remedy, not an equitable one." Furthermore, the whole point of the passage, in distinguishing legal remedies from equitable ones, is to highlight those remedies available to an ERISA fiduciary acting pursuant to §1132(a)(3). For that reason, Aetna finds no support in *Montanile*

Aetna reprises this argument with reference to the Sixth Circuit's decision in *Zirbel*. *See* 980 F.3d at 524 (6th Cir. 2020). There, the court states that a defendant "completely dissipates a fund by spending it on nontraceable items, like food," and as a

consequence, a previously existing equitable lien "dissolves." *Id.* The court in *Zirbel* continues, "[t]he plaintiff can still recover from the defendant's general assets at law, just not in equity and just not under §1132(a)(3)(B)." *Id.* (cleaned up). Here, again, there is no indication the court in *Zirbel* is saying an ERISA fiduciary can recover from someone's general assets. The circuit court is introducing basic principles of equity to illuminate what constitutes equitable relief available to an ERISA fiduciary.

Above all, Aetna's reliance on these cases is unpersuasive because Aetna has located its counterclaim in another universe: state law. While premised on state law, Aetna's counterclaim undoubtedly treads on ERISA's civil enforcement territory. *See Aetna*, 542 U.S. at 209 (2004). Among other problems, Aetna's attempt to end-run ERISA, if accepted, would result in an expansion of a fiduciary's remedies. "The six carefully integrated civil enforcement provisions found in §502(a) of the statute as finally enacted ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 145 (1985).[4] For that reason, Aetna's counterclaim, if realized, would also constitute an end-run around the legislative process.

---

[4] Outside of the "appropriate equitable relief" authorized by §1132(a)(3), there are several other remedies established by ERISA for other purposes. *See e.g.*, §1132(c)(1) (setting up a civil penalty scheme where an administrator has refused to provide certain plan information).

As stated, Aetna's state-law contract counterclaim "relates to" the employee benefit plan at-issue here. Accordingly, ERISA pre-empts the counterclaim. The Court will grant Dean's motion to dismiss on that basis. Fed. R. Civ. P. 12(b)(6).[5]

The Court makes two more points for clarity. First, if Aetna explicitly sought the return of overpayments through §1132(a)(3), its counterclaim would still suffer from a basic pleading deficiency. Aetna's counterclaim does not identify funds from which to recover nor plead that any such funds exist. (*See* Doc. 11). In opposing the current motion, moreover, Aetna does not challenge Dean's assertion that she has spent the funds. (Doc. 12 at 6).

Second, as *Sereboff* makes clear, categorizing a cause of action for overpayment of ERISA benefits as a "breach of contract" claim is not on its own offensive to ERISA or §1132(a)(3). 547 U.S. at 363. In *Sereboff*, the fiduciary did in fact file under §1132(a)(3) but seemingly termed its claim a "breach of contract." *Id.* at 360, 363. The court in *Sereboff* clarified that it was the remedies that mattered. *Id.* at 363. As explained, the fiduciary "alleged breach of contract and sought money, to be sure, but it sought its recovery through a constructive trust or equitable lien on a specifically identified fund, not from the Sereboffs' assets generally, as would be the case with a contract action at

---

[5] "As Plaintiff's state law claims are preempted, no relief can be granted and those motions are dismissed pursuant to Rule 12(b)(6)." *Boler v. Earley*, 865 F.3d 391, 400 (6th Cir. 2017).

law." *Id.*

Accordingly, Aetna could have pleaded its counterclaim as a "breach of contract" authorized by §1132(a)(3). Instead, Aetna explicitly disclaims that its breach of contract claim has anything to do with the ERISA enforcement scheme codified at §1132(a)(3). It is for this reason that Aetna's counterclaim is pre-empted.

Finally, in what is otherwise strictly a motion to dismiss, Plaintiff Dean "requests that this Court interpret the policy and issue an Order declaring her rights to full reimbursement of her ERISA disability benefits without any amount being reduced for Social Security benefits that she receives." (Doc. 12 at 7). The argument surrounding this request relates to Ohio insurance law, pre-emption, and ERISA's savings clause. (*Id.* at 7-14). However, the Court cannot reach the question without assuming facts not in the record. Indeed, Dean effectively requests a declaratory order equivalent to a judgment on the ultimate issue of the case. (*See* Doc. 12 at 7 ("…declaring her rights to full reimbursement of her ERISA disability benefits…")). The Court declines to issue such an order at this time.

### III. CONCLUSION

Accordingly, for the reasons reflected above, the Court **ORDERS** that:
1) Plaintiff's motion to dismiss (Doc. 12) is **GRANTED.** Defendant-Counterclaimant's counterclaim is **DISMISSED**.

2) The Court denies Plaintiff's request to further interpret her rights under ERISA. (Doc. 12).

**IT IS SO ORDERED.**

Date: 3/22/2022                                      *s/Timothy S. Black*
                                                                                                Timothy S. Black
                                                                                              United States District Judge